IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINE KUTZ, :
:
Plaintiff, :
v. : 3:19-CV-0176
: (JUDGE MARIANI)
CARGILL COCOA & CHOCOLATE, INC., :
:
Defendant. :

## MEMORANDUM OPINION

Presently before the Court is the Joint Motion of Plaintiff Christine Kutz ("Kutz") and Defendant Cargill Cocoa & Chocolate, Inc. ("Cargill") (Doc. 20) for judicial approval of the parties' settlement agreement. The parties seek to resolve Kutz's claims against Cargill under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. C.S. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. C.S. § 260.1 *et seq.*

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Christine Kutz was employed as a Food Safety Quality & Regulatory Technologist with Cargill from on or about April 20, 2015 to in or about April, 2018 (Doc. 13, ¶ 1). According to the Amended Complaint, Kutz "was not paid overtime wages during the limitations period." (*Id.* at ¶ 12). Kutz asserts that she was classified as a "non-exempt" employee for FLSA purposes when she was hired on or around April 20, 2015, but that "[i]n

or around August 2015, Defendant re-classified Ms. Kutz's position as 'exempt', though neither the position nor its requirements had changed." (*Id.* at ¶¶ 13, 14).

Kutz commenced this action by filing a five-count Complaint on January 31, 2019, asserting violations of the FLSA, the PMWA, the PWPCL (Counts I-III), as well as additional counts for breach of oral contract (Count IV) and unjust enrichment (Count V). (Doc. 1).

On April 12, 2019, Cargill filed a "Partial Answer and Affirmative Defenses to Count I and II of the Complaint." (Doc. 9). While Cargill admitted that it employed Plaintiff as a Food Safety Quality & Regulatory Technologist, it denied her claims for overtime on the basis that she was exempt under the FLSA and Pennsylvania law. (*Id.* at 4-6 (Def.'s Answer to ¶¶ 12, 13, 14, 15, 16 of Pl.'s Compl.)). Cargill also asserted that Plaintiff "was appropriately classified as exempt under the FLSA and Pennsylvania law and, therefore, was not entitled to overtime compensation for working more than 40 hours per week." (*Id.* at 8 (Def.'s Answer to ¶ 24 of Pl.'s Compl.)). Cargill denied that it failed to pay Plaintiff overtime at one and one-half times Plaintiff's regular rate of pay for all hours worked over 40 in a work week and denied that its actions were "willful, intentional and malicious". (*Id.* at 8 (Def.'s Answer to ¶¶ 25, 26, 27 of Pl.'s Compl.)). Cargill likewise denied the allegations of Count II of Plaintiff's Complaint with respect to the PMWA.

With respect to Counts III, IV and V of Plaintiff's Complaint, Cargill filed a Motion to Dismiss (Doc. 10) on April 12, 2018 and a brief in support thereof (Doc. 10-1) on that same date.

2

In response, Kutz filed an Amended Complaint (Doc. 13) on May 3, 2019. That Complaint again asserted violations by Cargill of the FLSA (Count I), violations of the PMWA (Count II) and violations of the PWPCL (Count III). Kutz did not include in her Amended Complaint the prior causes of action for breach of oral contract and unjust enrichment which had been asserted in her original Complaint.

Thereafter, Cargill on May 17, 2019 filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. (Doc. 18). Cargill again admitted that Kutz was Cargill's employee from on or about April 2015 until August, 2018 as a Food Safety Quality & Regulatory Technologist but otherwise denied that Plaintiff was entitled to overtime because she was exempt under the FLSA and Pennsylvania law. (*See generally id.*; Def.'s Answer to ¶¶ 12, 13, 14, 15, 16, 20, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 39, 40, 41, 42, 43, 44, 45 and 46 of Pl.'s Am. Compl.).

Cargill also set forth various affirmative defenses including the affirmative defense that "Plaintiff's claims are barred in whole or in part because Plaintiff was exempt from the maximum hours/overtime pay requirement pursuant to Section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213 (a)(1) and the Pennsylvania Minimum Wage Act." (Doc. 18 at 14).

On May 14, 2019, this Court ordered this case to mediation (Doc. 17). Gerard J. Geiger, Esquire, was appointed as mediator. On June 12, 2019, the mediator filed a report

advising the Court that the case had been completely settled and that Court approval of the settlement was required. (Doc. 19).

Pursuant to the terms of the settlement agreement and limited release, Cargill agreed to pay Kutz the total gross amount of ███████ payable in accordance with the terms of the settlement agreement.

## II. LEGAL STANDARD FOR APPROVAL OF A SETTLEMENT AGREEMENT UNDER THE FLSA

In *Howard v. Philadelphia Housing Authority*, the District Court set forth the legal standard by which a settlement agreement of claims under the FLSA must be reviewed:

> FLSA claims may be compromised or settled in two ways: (1) supervision by the Department of Labor, pursuant to 29 U.S.C. § 216(c), or (2) approval by the district court, pursuant to 29 U.S.C. § 216(b). *Adams v. Bayview Asset Mgmt., LLC*, 11 F.Supp.3d 474, 476 (E.D.Pa. 2014).
>
> The parties proceed under the second avenue – approval by the district court. Without guidance from the Third Circuit, district courts within this Circuit have looked to the standard set forth by Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), when a party seeks judicial approval of an FLSA settlement agreement pursuant to 29 U.S.C. § 216(b). *See Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *3 (E.D.Pa. Aug. 24, 2015) (collecting cases).
>
> Under the *Lynn's Food* standard, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F.Supp.2d 464, 466 (E.D.Pa. 2012) (quoting Lynn's Food, 679 F.2d at 1354); *see also Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514, at *3 (E.D.Pa. July 16, 2015) (applying the *Lynn's Food* standard).

> If the Court determines that the settlement concerns a "bona fide dispute," it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace. *See Mabry*, 2015 WL 5025810, at *3; *McGee v. Ann's Choice, Inc.*, No. 12–2664, 2014 WL 2514582, at *2 (E.D.Pa. June 4, 2014). The Court uses this standard to assess the propriety of FLSA collective action settlements and private (i.e., single-plaintiff) FLSA settlements alike. *Kraus v. PA Fit II, LLC*, No. 15-4180, 155 F.Supp.3d 516, 524-25, 2016 WL 125270, at *5 (E.D.Pa. Jan. 11, 2016) (explaining the rationale for applying the *Lynn's Food* standard to private FLSA settlements); *see also Mabry*, 2015 WL 5025810, at *1-2 (collecting cases in which the courts have applied the *Lynn's Food* standard to private FLSA settlement agreements); *Bettger v. Crossmark, Inc.*, No. 13–2030, 2015 WL 279754, at *3-4 (M.D.Pa. Jan. 22, 2015) (same).

197 F.Supp.3d 773, 776-777 (E.D. Pa. 2016). *See also Berger v. Bell-Mark Tech. Corp.*, 2019 WL 1922325, at *1-2 (M.D. Pa. 2019); *Yong Li v. Family Garden II, Inc.*, 2019 WL 1296258, at *1-2 (E.D. Pa. 2019).

## III. ANALYSIS

With the standard of review of a settlement agreement under the FLSA having been delineated, the Court proceeds to analyze the propriety of the proposed private FLSA settlement agreement below.

### A. Terms of Proposed Settlement

Under the terms of the proposed settlement, Cargill agrees to pay Kutz the total gross amount of ▅▅▅ to resolve Kutz's claims. Kutz will receive ▅▅▅ of the ▅▅▅ payment and her counsel will receive ▅▅▅ representing payment of Kutz's

attorney's fees and costs. ("Settlement Agreement and Limited Release", Doc. 20-1, ¶ 1(a), (b))[1].

In exchange for payment as set forth above, the proposed settlement agreement contains the following release and confidentiality and non-disparagement clauses:

> a. Kutz hereby irrevocably and unconditionally releases, remises, and forever discharges Cargill and any and all individuals acting on behalf of Cargill, including but not limited to, all of Cargill's directors, officers, employees or former employees, insurers, representatives, attorneys, parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all persons acting by, through, under or in concert with any of them (collectively, "the Releasees") of and from any and all actions, suits, debts, claims, liabilities, obligations, promises, agreements, controversies, damages, and expenses of any nature whatsoever, in law or equity, including claims for attorney's fees and costs, which she has had or may have had up until the date of this Agreement that relate to the facts alleged in the Complaint or the Amended Complaint, the claims asserted in the Lawsuit, and any claims that could have been asserted in the Lawsuit based upon the facts alleged in the Complaint or the Amended Complaint. Particularly, but without limitation, Kutz so releases any claims she has had or may have had against the Releasees arising under the Fair Labor Standards Act, the Pennsylvania

---

[1] The parties attached to their Joint Motion for Approval of Settlement (Doc. 20) a copy of the Settlement Agreement and Limited Release. However, the amounts to be allocated to the Plaintiff and to her attorney as stated above from the ▉▉▉▉ settlement payment were not stated in the document. On request of the Court, counsel for the Plaintiff provided the Court with a copy of the Settlement Agreement and Limited Release with the ▉▉▉▉ settlement amount being divided as stated above between the Plaintiff and her attorney. The complete Settlement Agreement and Limited Release have been filed of record by this Court under seal.

Additionally, on request of the Court, Plaintiff's counsel, Weisberg Cummings, P.C., provided a copy of the "Engagement Letter and Contingent Fee Agreement" which has also been filed of record in this case under seal. Paragraph three of that document states in part "our fee is thirty-five (35%) of the gross monies recovered by settlement, before a lawsuit is filed. If we file a lawsuit, writ of summons, or arbitration on your behalf, or commence binding mediation, after obtaining your permission to do so, then our fee will be forty percent (40%) of the gross monies recovered." Paragraph four of the Engagement Letter and Contingent Fee Agreement provides for the advancement of costs and expenses by Plaintiff's counsel as defined therein and further provides "[i]f we decide to advance any costs and expenses for your case and are successful obtaining monies for you, you agree to reimburse us from any recovery after our attorney fees are deducted from the gross aggregate, total amount."

Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, any other federal, state, or local ordinance relating to Cargill's payments to Kutz of wages or overtime, and any claim under the common law (including but not limited to breach of contract and unjust enrichment) relating to Cargill's payments to Kutz of wages or overtime.

b. Kutz agrees, promises and covenants that she will not file or permit to be filed in her name or on her behalf any lawsuit in court against any of the persons or entities released in this Agreement based upon any act or event released by this Agreement. Kutz further agrees that should any charge, lawsuit, complaint or other claim be filed or pursued in her name or on her behalf with any governmental agency, or in any other forum, against any of the persons or entities released herein, based upon any act or event released herein, she will not seek or accept any personal relief based upon such charge, lawsuit, complaint or other claim, including but not limited to an award of monetary damages or reinstatement to her employment with Cargill, provided that nothing in this Agreement is intended to release claims related to the validity or enforcement of this Agreement. Nothing in this Agreement limits or precludes Kutz from filing a charge with the Equal Employment Opportunity Commission ("EEOC") or participating in any investigation or proceeding conducted by the EEOC, nor shall it apply to any non-waivable charges or claims brought before any other governmental agency.

c. Kutz represents and warrants that she has not assigned or otherwise transferred to any person, party or entity any of the claims, demands, actions, liabilities, obligations or causes of action being released pursuant to this Agreement. Kutz further agrees to indemnify the Releasees and to hold them harmless from any claims, demands, actions, liabilities, obligations and/or causes of action previously assigned or otherwise transferred by Kutz, in the event it is discovered that such assignation or transfer did in fact occur.

(Doc. 20-1, ¶ 7 (a)-(c)).

Paragraph eight of the settlement agreement entitled "Confidentiality and Non-Disparagement" provides:

a. <u>Confidentiality of Agreement</u>. The Parties agree that this Agreement and its specific terms are confidential. In consideration of the promises of Cargill set forth herein, Kutz, and her attorneys, agents, and representatives, agree

7

not to reveal, disclose, or communicate (a) the existence or terms of this Agreement, (b) the consideration paid hereunder, or (c) the nature of any claims contemplated that are resolved by this Agreement. Kutz confirms that she has not disclosed such information up to the date of her execution of this Agreement. This includes, but is not limited to, any disclosure or communication (a) to any reporter or other member of the press, including but not limited to editors, opinion writers, or others for online publications that are similar to traditional members of the press; (b) on any website or social media platform (e.g., Facebook, Twitter, YouTube, Instagram, Tumblr); or (c) to distribute this Agreement to any member of the public or to post this Agreement on a website. Nothing herein shall prohibit disclosure of the existence or terms of this Agreement, as set forth in this subparagraph below, to Kutz's spouse, attorneys, tax accountants, financial advisors, or federal, state, or local governmental authorities. For the avoidance of doubt, Kutz is entitled to disclose the existence and terms of this Agreement and the allegations underlying this Agreement: (i) to the extent necessary to report income to appropriate taxing authorities; (ii) in response to an order of a court of competent jurisdiction; (iii) in response to a properly issued and valid subpoena; or (iv) as otherwise required by law. Prior to making a disclosure under subparts (ii), (iii) and (iv) of this Paragraph, Kutz agrees that she will notify Cargill, through its counsel, of the order, subpoena or legal requirement compelling the disclosure and of the disclosure she intends to make, and that such notice will be provided to Michael Wilhelm/Law/MS 24, Cargill, Inc., 15407 McGinty Road West, Wayzata, MN 55391.

(*Id.* at ¶ 8(a)).

The parties have included in paragraph 10 of the settlement agreement a provision entitled "Severability" which states:

10. <u>Severability.</u> If any court of competent jurisdiction shall hold invalid any part of this Agreement, then the Parties request that the court making such determination afford them the ability to cure the offending provision and, if the Court does not provide the opportunity to cure, then the Court shall have the right to modify this Agreement and in its reduced form this Agreement shall be enforceable to the fullest extent permitted by law. If any provision or part of a provision of this Agreement is held to be invalid or unenforceable, then the Parties request that the court making such determination afford them the ability to cure the offending provision and, if the Court does not provide the

opportunity to cure, then such provision shall be severed from this Agreement and the remaining provisions shall remain in full force and effect. This paragraph shall be interpreted to give the fullest possible effect to Kutz's release of claims.

(*Id.* at ¶ 10).

### B. Bona Fide Dispute

Initially the Court determines whether the proposed settlement resolves a *bona fide* dispute between the parties. Kutz alleges that Cargill willfully, intentionally and maliciously violated state and federal law. (Doc. 13, ¶¶ 16, 25-28, 34). Kutz further asserts that Cargill knew she worked more than 40 hours a week and yet failed to compensate her at the rate of one and one-half times her regular pay as required by the FLSA. (*Id.* at ¶¶ 16, 24-26).

Cargill denies these allegations and raises ten affirmative and other defenses in its answer. (*See* Doc. 18). Specifically, Cargill denies that Kutz worked over 40 hours in any given work week during the relevant period and further asserts that for the period of her employment, Cargill employed Kutz as a Food Safety Quality & Regulatory Technologist and that she was not entitled to overtime because she was exempt under the FLSA and Pennsylvania law. (*Id.* at ¶¶ 12-16, 24-26).

As noted in *Howard v. Philadelphia Housing Authority, supra*, "[a] dispute is 'bona fide' where it involves 'factual issues' rather than 'legal issues such as the statute's coverage and applicability.'" 197 F.Supp.3d at 777 (quoting *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at *1 (M.D.Pa. 2013)). Thus a "proposed settlement resolves a bona fide dispute where the settlement's terms 'reflect a reasonable compromise over issues, such as . . . back

wages, that are actually in dispute' and are not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "In other words, 'for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented.'" *Id.* at 778 (quoting *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 530 (E.D. Pa. 2016).

Here, it is the Court's view on review of the pleadings and related documents filed of record that there are genuine issues as to whether Kutz could prove that she worked the overtime hours alleged and that Cargill knew of and willfully disregarded its obligation to compensate her at a rate of one and one-half times her regular rate for all overtime hours worked. Additionally, but central to Kutz's claim of entitlement to overtime, there is a significant, perhaps pivotal, issue as to whether Kutz is an exempt employee under the FLSA such that its overtime provisions would not have application to her. For these reasons, the Court concludes that the proposed agreement resolves a *bona fide* dispute between the parties.

### C. Whether the Proposed Settlement Agreement is Fair and Reasonable and in Furtherance of the FLSA's Implementation

As part of its analysis, the Court must determine whether the settlement is fair and reasonable. The Settlement Agreement provides that Cargill shall pay a total of ▮▮▮▮ to the Plaintiff. The parties in their Joint Motion for Approval of Settlement state:

10

> Cargill has agreed to pay Ms. Kutz a significant sum in excess of Ms. Kutz's gross pay for the entirety of 2017, her last full year of employment with the company. In exchange, Ms. Kutz agrees to the stipulated dismissal of her lawsuit as well as to the terms of a limited release and a confidentiality clause. Ms. Kutz made this agreement voluntarily and with the advice and support of her legal counsel.
>
> Both parties also faced the risk of establishing or disputing liability. The parties vigorously disputed the facts of this case. If the case had proceeded, the question of liability likely would have depended on the jury's assessment of the credibility of conflicting witness testimony concerning the nature of Ms. Kutz's job duties. The jury also would have to assess the credibility of conflicting witness testimony concerning Ms. Kutz's alleged work hours to determine the amount of overtime pay that she was allegedly owed.

(Doc. 20, 4-5).

Further, the parties in their Joint Motion assert that the litigation "would be complex, time-consuming, costly, and uncertain. Neither party could reliably expect success on the merits without assuming significant risk, and neither party could accurately predict of [sic] amount of potential recovery, if any, that might be awarded." (*Id.* at 5).

The Joint Motion also addresses the "difficult-to-satisfy standard of willfulness" explaining that because Kutz did not file suit until January 31, 2019, her claims were possibly limited by a two-year statute of limitations. (*Id.*)(citing 29 U.S.C. § 255(a)). In the absence of a finding of willfulness, the parties point out that Kutz would be precluded from seeking damages for the 16 months of her tenure that occurred prior to January 30, 2017. (*Id.*).

In making a determination of whether a proposed settlement is fair and reasonable, "district courts within the Third Circuit have considered the factors set forth in *Girsh v.*

*Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which established evaluative criteria for measuring the fairness of proposed class action settlements." *Berger*, 2019 WL 1922325 at *4.

The factors set forth in *Girsh v. Jepson* are as follows:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (internal quotations and alterations omitted)).

The Court in *Berger* noted that:

Some of the *Girsh* factors are of "little help, if not irrelevant, in the single-plaintiff context." *Howard v. Phila. Hous. Auth.*, 197 F.Supp.3d 773, 777 n.1 (E.D. Pa. 2016). Consequently, courts need not apply the factors mechanically. *Id.* (quoting *Kraus*, 155 F.Supp.3d at 523 n.3).

*Berger*, 2019 WL 1922325 *at 5. *See also*, *Kraus*, 155 F.Supp.3d 516 at 523 n.3 (in using the *Girsh* factors to assess whether private FLSA settlements are fair and reasonable, district courts "are forced to ignore the factors specific to the class-action context, and the resulting analysis is not a *Girsh* analysis at all").

Applying the *Girsh* factors quoted-above, in particular factors (1), (3), (4), (5), (8) and (9), for the reasons set forth previously, the Court finds that the agreed upon sum of ███ is reasonable compensation for Kutz's disputed claims for overtime pay.

However, the provisions of the Settlement Agreement and Limited Release entitled "Confidentiality and Non-Disparagement" (Doc. 20-1, ¶ 8) requires separate and further analysis.

The operative language of paragraph seven provides Kutz's release and discharge of Cargill and those individuals acting on its behalf and any related entities from all claims or suits "of any nature whatsoever" which Kutz "has had or may have had up until the date of this Agreement that relate to the facts alleged in the Complaint or the Amended Complaint, the claims asserted in the Lawsuit, and any claims that could have been asserted in the Lawsuit based upon the facts alleged in the Complaint or Amended Complaint." (Doc. 20-1 ¶ 7(a)). The provisions of paragraph seven further provide that "[p]articularly, but without limitation, Kutz so releases any claims she has had or may have had against the Releasees arising under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, any other federal, state, or local ordinance relating to Cargill's payments to Kutz of wages or overtime, and any claim under the common law (including but not limited to breach of contract and unjust enrichment) relating to Cargill's payments to Kutz of wages or overtime." (*Id.*).

As the District Court noted in *Berger*,

> District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." *Singleton v. First Student Mgmt. LLC*, No. 13-1744 JEI, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); *see also Giannattasio*, 2018 WL 3913109, at *2-3; *Kraus*, 155 F. Supp. 3d at 532-33; *Bettger*, 2015 WL 279754, at *8-10 (collecting cases). Courts must closely examine FLSA

settlements containing "pervasive" release provisions that "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." *Brumley*, 2012 WL 1019337, at *8 (citation omitted). Provisions requiring employees to generally release and waive all future claims against employers contravene the FLSA objective of maintaining equal bargaining power between employers and employees, thereby "impermissibly frustrat[ing] the implementation of an otherwise fair and reasonable settlement." *Kraus*, 155 F. Supp. 3d at 533 (citing *Bettger*, 2015 WL 279754, at *9); *see also Giannattasio*, 2018 WL 3913109, at *2 (same); *Brumley*, 2012 WL 1019337, at *8.

*Berger*, 2019 WL1922325 at *5.

In *Berger*, the release under scrutiny by the Court not only purported to release and discharge the employer from claims under the FLSA, the PMWA, and the PWPCL, but also

"claims arising under . . . the Pennsylvania Whistle Blower Law, the public policy exception to the employment at will doctrine, the Age Discrimination in Employment Act, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the Americans with Disabilities Act, the National Labor Relations Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, or any other federal, state, or local law, statute, or ordinance . . . ."

*Id.* (quoting "Release" clause of proposed settlement agreement).

Here, unlike the release language which the Court found "inappropriately comprehensive" in *Berger*, 2019 WL1922325 at *5, the release language at issue in this case is strictly limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in this lawsuit "based upon the facts alleged in the Complaint or the Amended Complaint." Additionally, the release extends to claims under the FLSA, the PMWA and the PWPCL as well as any other federal, state or local ordinance

14

"relating to Cargill's payments to Kutz of wages or overtime and any claim under the common law (including but not limited to breach of contract and unjust enrichment) relating to Cargill's payments to Kutz of wages or overtime." Since the Plaintiff's Amended Complaint alleges facts and claims only for overtime pay which the Plaintiff alleged she was owed, and no other facts that would plausibly give rise to any other cause of action, the Court finds the release to be limited only to claims for overtime pay or wages and only to release and discharge those specific claims. Accordingly, the release in the Settlement Agreement does not extend beyond "claims related to the specific litigation", *Berger*, 2019 WL1922325 at *5. To be clear, the Court's approval of the release provision in paragraph seven of the parties' Settlement Agreement and Release is based on its interpretation of the release as releasing and discharging nothing other than claims for overtime pay during the relevant time period as set forth in the Amended Complaint. *See Howard*, 197 F.Supp.3d at 779-780.

In *Howard*, the Court declined to approve the release provision in the proposed Settlement Agreement where Plaintiff's Complaint alleged that Defendant terminated her employment in retaliation for her complaints about wage and overtime FLSA violations. Because the proposed Settlement Agreement asked Plaintiff to waive "any and all Claims" that "concern[ ] the termination of Plaintiff's employment with Defendant, including but not limited to, claims arising under the Fair Labor Standards Act and Pennsylvania wage and

hour laws," the Court concluded the terms of the release improperly exceeded the legal and factual bases of Plaintiff's Complaint.

> These broad terms, for which the parties seek judicial approval, exceed the legal basis of Plaintiff's Complaint (i.e., wage and hour statutory protection) as well as the factual basis of her Complaint (i.e., alleged retaliation by her employer after she filed complaints with its HR department about wage and overtime pay violations). Legally, the proposed release provisions would preclude Plaintiff from bringing any future claim arising under statutes including "but not limited to" the FLSA and Pennsylvania wage and hour laws. Factually, the proposed release provisions would preclude Plaintiff from bringing "any and all Claims" "concerning the termination of Plaintiff's employment." If the Court blindly approved the waiver of "any and all Claims" "concerning the termination of Plaintiff's employment," the Court risks judicially endorsing a waiver of Plaintiff's other statutorily protected rights that may be implicated by an allegedly unlawful termination. *See, e.g.*, 42 U.S.C. § 1981 (unlawful retaliation under the Civil Rights Act of 1890); 42 U.S.C. § 2000e-3(a) (discriminatory retaliation under Title VII); 42 U.S.C. § 12101 (retaliation under the Americans with Disabilities Act); 43 Pa. Cons. Stat. § 951 (state law cause of action for unlawful retaliation). And such judicial endorsement exceeds the court's judicial approval role under the FLSA.
>
> Moreover, where a defendant has provided consideration for the release of a plaintiff's FLSA claims arising from a particular event, which is the case here, the Court is without knowledge as to the value of those claims. *See, e.g., Bettger*, 2015 WL 279754, at *8 (explaining that the court had no "information regarding the value of the released claims to the parties, and the parties fail[ed] to provide any explanation for the agreement's far-reaching waivers"). The release of an unknown claim based on a separate statutory cause of action frustrates the fairness of the benefit otherwise provided under the proposed Settlement Agreement. *See id.* Therefore, the Court will not, under the auspices of its FLSA settlement approval duty, approve the release provision as drafted in the proposed Settlement Agreement.

*Howard*, 197 F.Supp.3d at 779-780.

In this case, because Kutz has not alleged any other facts or causes of action beyond her claim for overtime pay, the concerns raising by the Court in *Howard* do not prevent the approval of the language of the release in this case.

The Court further views the language of the terms of paragraph eight, entitled "Confidentiality and Non-Disparagement", in accordance with the statement of the applicable law in *Yong Li v. Family Garden II, Inc.*:

> "There is 'broad consensus' that FLSA settlement agreements should not be kept confidential." *Brown*, 2013 WL 5408575, at *3 (citing *Brumley*, 2012 WL 300583, at *3). The "public-private character" of employee rights under the FLSA means that the public, including current, former, or potential employees of a particular defendant, has an interest in assuring that employee wages are fair; thus, courts find that restrictive confidentiality provisions frustrate the implementation of the FLSA. *See Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (approving settlement agreement with the exception of confidentiality clause).
>
> Courts have approved limited or narrowly drawn confidentiality clauses only where the clauses did not prevent plaintiffs from discussing the settlements with defendants' employees. *Id.* For example, in *McGee v. Ann's Choice, Inc.*, the court found a confidentiality provision reasonable where "[p]laintiffs are free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." No. CIV.A. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).

*Yong Li*, 2019 WL 1296258 at *4.

The District Court approved the confidentiality agreement in *Yong Li* because it permitted disclosure "to the extent required by law or the District Court's procedure," but only "to the extent that it is interpreted to permit Plaintiff to discuss its terms with friends, family, Defendants' employees, and individuals not affiliated with the media." *Id.* at *5.

17

The confidentiality provision must not frustrate the implementation of the FLSA in the work place. Thus, in accordance with the reasoning in *Yong Li*, Plaintiff may not be prevented from discussing the settlement with Defendant's employees, friends, families, and individuals not affiliated with the media. Such discussion may take place orally, in writing, or through a social media platform among the individuals identified herein who, in turn, must keep the terms of the agreement disclosed to them confidential. The confidentiality provisions of paragraph eight are accordingly approved subject to the right of Plaintiff to disclose the terms of the agreement as set forth in paragraph eight and, in addition, to Defendant's employees and Plaintiff's friends, families, and individuals not affiliated with the media. See *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582 at *3 (E.D. Pa. 2014).

### D. Attorney's Fees

Here, the Settlement Agreement provides that out of the ▓▓▓▓ proceeds paid to resolve this case, the Plaintiff will receive ▓▓▓▓ while attorney's fees and costs in the amount of ▓▓▓▓ will be paid to Plaintiff's counsel, Weisberg Cummings, PC.

Because suit was filed in this case, under the terms of the Engagement Letter and Contingent Fee Agreement, Plaintiff has agreed to attorney's fees in the amount of 40% of the gross monies recovered, in addition to the payment of costs advanced by counsel. The calculation of attorney's fees at 40% of ▓▓▓▓ yields attorney's fees in the amount of ▓▓▓▓. Presumably the additional ▓▓▓▓ represents costs. In *Kraus v. PA Fit II, LLC*, the Court noted that:

> Moreover, it is true that courts have approved attorneys' fees in FLSA settlement agreements "from roughly 20-45%" of the settlement fund. *Mabry*, 2015 WL 5025810, at *4 (collecting cases and the percentages that those courts found to be reasonable). But that range of recovery has arisen in collective and class action settlements, not private actions.
>
> Here, the private settlement proposes $7,065.73 in attorneys' fees and costs, which represents approximately thirty-nine percent of the total settlement amount of $18,000. Counsel has not provided a basis for the proposed percentage, nor has counsel provided a lodestar calculation against which the Court could compare the percentage of recovery to determine whether "the total amount recovered is significantly less than the lodestar method would permit." *Id.*; *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 305-306 (3d Cir. 2005) (describing this process as "cross-checking").
>
> The Court is required to "articulate" the basis for a fee award. *Gunter*, 223 F.3d at 196, 198-99; *see Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *3 (M.D.Pa. Sept. 25, 2013) (declining to approve the requested attorneys' fees without any basis on which the court could evaluate the proposed award). Here, on this record, the Court cannot do so. Therefore, the Court will deny the attorneys' fees without prejudice so that counsel may file a memorandum indicating the basis for the calculated fees.

*Kraus*, 155 F.Supp.3d at 534.

Here, this Court finds that the above quoted language of *Kraus* has complete application to the Court's determination of the propriety of attorney's fees in this case. As in *Kraus*, counsel has not provided a basis for the proposed percentage, nor has counsel provided a lodestar calculation against which the Court could compare the percentage of recovery so as to determine whether the total amount recovered in this case is significantly less than the lodestar method would permit. Without additional information the Court is not in a position to fulfill its responsibility to articulate a basis for a fee award in this case.

Accordingly, it will, as the Court did in *Kraus*, deny the attorney's fees without prejudice so that counsel may file a memorandum indicating the bases for the calculated fee.

## IV. CONCLUSION

For the afore-discussed reasons, the Court will defer approval of the settlement agreement pending receipt from Plaintiff's counsel of the required information necessary to allow the Court to evaluate the propriety of the attorney's fees sought by Plaintiff's counsel in this case. The other provisions of the Settlement Agreement and Limited Release are conditionally approved to the extent that paragraph seven of the Settlement Agreement and Limited Release is understood as limited by this Court's opinion and paragraph eight thereof is reformed as required by the Court's opinion herein.

A separate Order follows.

Robert D. Mariani
United States District Judge